UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALLEN KRAUSE,<br><br>        Plaintiff,<br><br>    v.<br><br>BARCLAYS BANK DELAWARE,<br><br>        Defendant. | No. 2:13-CV-01734-MCE-AC<br><br>**MEMORANDUM AND ORDER** |

Plaintiff Allen Krause ("Plaintiff") seeks relief from Defendant Barclays Bank Delaware ("Defendant') for violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, and the Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code § 1788, arising from Defendant's attempts to collect on Plaintiff's credit card debt. See Compl., Aug. 22, 2013, ECF No. 1. Presently before the Court is Defendant's Motion to Compel Arbitration and Stay Litigation. Mot., Oct. 17, 2013, ECF No. 8. Plaintiff filed a statement of non-opposition. Non-Opp'n, Nov. 6, 2013, ECF No. 10. For the reasons set forth below, Defendant's Motion is GRANTED.[1]

///

///

---

[1] Because oral argument will not be of material assistance, the Court ordered this matter submitted on the briefs. E.D. Cal. Local R. 230(g).

1

# BACKGROUND[2]

Plaintiff applied for a credit card account with Defendant in June 2007. The application was approved, and Defendant issued a credit card to Plaintiff. The credit card account was governed by a written Credit Card Cardmember Agreement ("Cardmember Agreement"). Plaintiff eventually defaulted on the account, and Plaintiff alleges that, in attempting to collect this debt, Defendant repeatedly and regularly called Plaintiff, at a frequency which Plaintiff states amounted to harassment—sometimes multiple times in one day, sometimes within minutes of the previous call. Plaintiff repeatedly requested that Defendant remove Plaintiff from the automatic dial list, but Defendant's calls continued. Plaintiff also alleges that Defendant called his cellphone number without obtaining his prior express consent, in violation of the TCPA.

Defendant provides the Court with evidence of an agreement to arbitrate, contained in the Cardmember Agreement. The clause at issue states:

> Arbitration. Any claim, dispute or controversy ("Claim") by either you or us against the other, or against the employees, agents, or assigns of the other, arising from or relating in any way to this Agreement or your Account, or any transaction on your Account including (without limitation) Claims based on contract, tort (including intentional torts), fraud, agency, negligence, statutory or regulatory provisions, or any other source of law and Claims regarding the applicability of this arbitration clause or the validity of the entire Agreement, shall be resolved exclusively and finally by binding arbitration under the rules and procedures of the Arbitration Administrator selected at the time the Claim is filed.

Roark Decl. Ex. B. 16, Oct. 17, 2013, ECF No. 8-1. Additionally, the Cardmember Agreement provides: "[b]y signing, keeping[,] or using your Card or Account, you agree to the terms and conditions of this Agreement." Id. at 13.

///
///

---

[2] The following recitation of facts is taken from Plaintiff's Complaint, ECF No. 1, and Defendant's Motion to Compel Arbitration, ECF No. 8.

## STANDARD

"The [Federal Arbitration Act ("FAA")] was enacted in 1925 in response to widespread judicial hostility to arbitration agreements." AT&T Mobility LLC v. Concepcion, 131 S. Ct. 1740, 1745 (2011).  Under the FAA, arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  Section 2 of the FAA "reflect[s] . . . a 'liberal federal policy favoring arbitration." Concepcion, 131 S. Ct. at 1745 (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983)).  At the same time, however, § 2 reflects "the 'fundamental principle that arbitration is a matter of contract.'"  Id. (quoting Rent-A-Center, W., Inc. v. Jackson, 130 S. Ct. 2772, 2776 (2010)).  "[Section] 3 requires courts to stay litigation of arbitral claims pending arbitration of those claims, in accordance with the terms of the agreement; and § 4 requires courts to compel arbitration 'in accordance with the terms of the agreement' upon the motion of either party to the agreement . . . ."  Id. at 1748.

Thus, "[b]y its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218 (1985) (citing 9 U.S.C. §§ 3, 4) (emphasis in original).  "The standard for demonstrating arbitrability is not a high one; in fact, a district court has little discretion to deny an arbitration motion, since the [FAA] is phrased in mandatory terms." Republic of Nicaragua v. Standard Fruit Co., 937 F.2d 469, 475 (9th Cir. 1991).  "Moreover, the scope of an arbitration clause must be interpreted liberally and 'as a matter of federal law, any doubts concerning the scope of arbitrable disputes should be resolved in favor of arbitration.'" Concat LP v. Unilever, PLC, 350 F. Supp. 2d 796, 804 (N.D. Cal. 2004) (quoting Moses H. Cone, 460 U.S. at 24; Three Valleys Mun. Water Dist. v. E.F. Hutton & Co., 925 F.2d 1136, 1144 (9th Cir. 1991); French v. Merrill Lynch, 784 F.2d 902, 908 (9th Cir. 1986)).

Thus, "[a]n order to arbitrate . . . should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." United Steelworkers of Am. v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582-83 (1960).

In determining whether to compel arbitration, the Court may not review the merits of the dispute. Instead, the Court must limit its inquiry to three steps: (1) whether the contract containing the arbitration agreement evidences a transaction involving interstate commerce; (2) whether there exists a valid agreement to arbitrate; and (3) whether the dispute(s) fall within the scope of the agreement to arbitrate. Standard Fruit, 937 F.2d at 476-78.

## ANALYSIS

### A.  Transaction Involving Interstate Commerce

The FAA provides that "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable . . . ." 9 U.S.C. § 2. Section 1 defines "commerce" to mean, among other things, "commerce among the several States or with foreign nations . . . ." Id. § 1. "The 'interstate commerce' provision has been interpreted broadly, embracing any agreement that in its operation directly or indirectly affects commerce between states in any fashion." Affholter v. Franklin Cnty. Water Dist., 1:07-CV-0388-OWW-DLB, 2008 WL 5385810, at *2 (E.D. Cal. Dec. 23, 2008) (citing Allied-Bruce Terminix Cos., Inc. v. Dobson, 513 U.S. 265, 277-282 (1995)).

In this case, the parties do not dispute that the Cardmember Agreement evidences a transaction involving interstate commerce.

///

Indeed, the contract containing the arbitration agreement at issue is a contract for a consumer credit card between citizens of two different states—California and Delaware. Accordingly, the transaction "involve[es] interstate commerce." See Ackerberg v. Citicorp USA, Inc., 898 F. Supp. 2d 1172, 1175, 1177 (N.D. Cal. 2012) (compelling arbitration under the FAA based on arbitration clause contained in credit card agreement between citizens of different states); see generally Allied-Bruce Terminix Cos., 513 U.S. at 274-75 (interstate-commerce requirement should be construed broadly to include all activities that merely affect interstate commerce).

### B.    Existence of a Valid Agreement to Arbitrate

The Court's second task is to determine whether there exists a valid agreement to arbitrate. Standard Fruit, 937 F.2d at 476-78; see also Sanford v. MemberWorks, Inc., 483 F.3d 956, 962 (9th Cir. 2007). While the FAA expresses a strong public policy in favor of enforcing arbitration agreements, the Court must first establish that there is an agreement to be enforced. Baker v. Osborne Dev. Corp., 159 Cal. App. 4th 884, 892 (2008). "[T]he question of whether a party is bound by an agreement containing an arbitration provision is a 'threshold question' for the court to decide." Microchip Tech. Inc. v. U.S. Philips Corp., 367 F.3d 1350, 1357 (Fed. Cir. 2004) (citing John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543 (1964)) (applying Ninth Circuit law). In determining whether an agreement to arbitrate exists, the district court "appl[ies] general state-law principles of contract interpretation, while giving due regard to the federal policy in favor of arbitration by resolving ambiguities as to the scope of arbitration in favor of arbitration." Wagner v. Stratton Oakmont, Inc., 83 F.3d 1046, 1049 (9th Cir. 1996); see also Pokorny v. Quixtar, Inc., 601 F.3d 987, 994 (9th Cir. 2010).

///
///
///

Here, the Cardmember Agreement contains language providing that "[c]laims regarding the applicability of this arbitration clause or the validity of the entire Agreement shall be resolved exclusively and finally by binding arbitration under the rules and procedures of the Arbitration Administrator selected at the time the Claim is filed." Roark Decl. Ex. B at 16.

This language is a "delegation provision"—"an agreement to arbitrate threshold issues concerning the arbitration agreement." Rent-A-Center, W., Inc., 130 S. Ct. at 2777. The Supreme Court has "recognized that parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." Id. (citing Howsam, 537 U.S. at 83-85; Green Tree Fin. Corp. v. Bazzle, 539 U.S. 444, 452 (2002) (plurality opinion)). "This line of cases merely reflects the principle that arbitration is a matter of contract." Id. (citing First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 943 (1995)). "An agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other." Id. In Rent-A-Center, the Supreme Court found that a delegation provision "is valid under § 2 'save upon such grounds as exist at law or in equity for the revocation of any contract,' and federal courts can enforce the agreement by staying federal litigation under § 3 and compelling arbitration under § 4." Id. at 2778.

Plaintiff does not contest the validity of the delegation provision. Thus, the preliminary question of whether there exists a valid agreement to arbitrate is a gateway issue for the arbitrator(s), and not the Court, to decide.

///
///
///
///
///

### C.     Disputes Fall Within the Scope of the Agreement to Arbitrate

"In considering the scope of an arbitration clause's application, U.S. courts have recognized a distinction between 'broad' and 'narrow' language." Concat LP, 350 F. Supp. 2d at 807 (quoting Mediterranean Enterprises, Inc. v. Ssangyong Corp., 708 F.2d 1458, 1463-64 (9th Cir. 1983)).  The rule is that, where an arbitration clause applies to matters "arising under" the agreement, its scope is narrowly defined, but where it applies to matters "arising out of or relating to" the agreement, its application should be broadly construed.  Id.  "[W]hen an arbitration clause refers to disputes or controversies 'under' or 'arising out of' the contract, arbitration is restricted to 'disputes and controversies relating to the interpretation of the contract and matters of performance.'"  Mediterranean Enterprises, Inc., 708 F.2d at 1465.

However, given that the delegation provision, supra, applies to questions regarding the "applicability" of the arbitration clause, the issue of whether the disputes fall within the scope of the agreement to arbitrate is also a gateway issue that the arbitrator(s), rather than the Court, must decide.  Again, Plaintiff does not contest that the disputes fall within the scope of agreement to arbitrate, nor does Plaintiff contest that this issue must be decided by the arbitrator(s).

Thus, in accordance with the parties' contract, the Court must stay the litigation to permit the arbitrator(s) first arbitrate these "gateway" issues, and then, if permissible, arbitrate the substantive claims.

///
///
///
///
///
///
///
///

**CONCLUSION**

Accordingly, IT IS HEREBY ORDERED THAT Defendant's Motion to Compel Arbitration and Stay the Case is GRANTED.[3]  ECF No. 8.  The litigation is stayed in its entirety pending completion of the arbitration.  The parties shall submit a joint status report within sixty (60) days of the date this order is filed, and additional joint status reports each sixty (60) days thereafter.

IT IS SO ORDERED.

Dated:  November 19, 2013

_____
MORRISON C. ENGLAND, JR, CHIEF JUDGE
UNITED STATES DISTRICT COURT

---

[3] However, Defendant's request that the Court require Plaintiff to commence arbitration within sixty days, and dismiss Plaintiff's claims with prejudice should Plaintiff fail to do so, is DENIED.